UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

REBECA BROWN,

        Plaintiff,

v.                             Case No: 2:21-cv-326-KCD

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## ORDER[1]

Rebeca Brown sues under 42 U.S.C. § 405(g) to review the Commissioner of Social Security's decision denying her application for disability benefits. (Doc. 1.) The procedural history, administrative record, and law are summarized in the joint memorandum (Doc. 23) and not repeated here.

Brown presses one issue on appeal: the administrative law judge erred in finding her mental impairments were not severe. (Doc. 23 at 12.) Specifically, Brown contends the evidence "compels a finding that [she] had at least a moderate limitation in the area of interacting with others." (*Id.* at 13.) The Commissioner argues that Brown failed to meet her burden and

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

substantial evidence supports the ALJ's findings. (*Id.* at 16-24.) The Court agrees with the Commissioner.

A court's review of a decision by the Commissioner is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The "threshold for such evidentiary sufficiency is not high." *Id.*[2]

The court must view the record as a whole, considering evidence favorable as well as unfavorable to the Commissioner, when determining whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The court may not reweigh evidence or substitute its judgment for that of the Commissioner. And even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

---

[2] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

2

An individual claiming Social Security disability benefits must prove he or she is disabled. *Moore v. Barnhart,* 405 F.3d 1208, 1211 (11th Cir. 2005). This inquiry proceeds under a five-step process:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience."

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

Brown's argument is directed at step two of the evaluation process. (Doc. 23 at 12.) There, the ALJ must determine whether the claimant's medical impairment is severe. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment's severity is "measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *Lucas v. Berryhill*, No. 8:17-cv-2246, 2019 WL 968401, at *3 (M.D. Fla. Feb. 28, 2019).

When the claimant alleges a mental impairment, as here, the ALJ must apply the Psychiatric Review Technique ("PRT") at step two. *Moore,* 405 F.3d at 1213-14. This technique requires separate evaluations of how the

claimant's mental impairment impacts four functional areas: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a. The ALJ's decision "must include a specific finding as to the degree of limitation in each of the functional areas" identified. *Id.* § 404.1520a(e)(4); *Moore,* 405 F.3d at 1214 ("[S]ocial security regulations require the ALJ to complete a PRT [form] and append it to the decision, or incorporate its mode of analysis into his findings and conclusions.").

If, after applying the PRT, the ALJ rates the functional limitations caused by the claimant's mental impairment to be "none" or "mild," then the ALJ will generally conclude that the impairment is not severe. 20 C.F.R. § 404.1520a(d)(1). The ALJ must specifically explain his opinion, including the degree of limitation found in the functional areas. 20 C.F.R. § 404.1520a(c)(4), (e)(4).

Here, the ALJ properly applied the PRT and found that Brown's mental impairments of PTSD and alcohol use, considered apart or in combination, caused no more than a minimal limitation in her ability to perform basic mental work activities, and were therefore non-severe. (Tr. 24.) The ALJ concluded that Brown had no more than mild limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (Tr. 27-28.)

4

Related to Brown's ability to interact with others, which is where she claims error, the ALJ relied on record evidence that: 1) Brown interacted normally with treating and examining practitioners, and treatment notes provide that Brown was pleasant, cooperative, in no distress, and showed no deficiencies in eye contact, speech, or conversation; 2) Brown did not report serious problems of interpersonal interactions to treating or examining physicians; 3) Brown reported socializing and generally maintained good relationships with family members; 4) despite certain reports of difficult interactions with others, Brown nevertheless reported going dancing once a week, and volunteer work which "likely required some social interaction." (Tr. 27-28.) The ALJ also underscored that Brown's PTSD symptoms were generally stable on medication, many of Plaintiff's mental status examinations and treatments notes show "essentially normal psychiatric[]" findings, and Brown generally presented as stable, alert, orientated, and in no acute distress. (Tr. 24-28, 409, 432, 435-36, 442, 449, 459, 464, 467, 471, 475, 485, 645, 649, 710, 727-28, 779, 785, 787, 791, 796, 830, 847, 860-61, 863, 937.)

Brown argues the record compels a finding that she had at least a moderate limitation in the area of interacting with others, and points to her mental status examination notes showing an anxious mood or a restricted and irritable affect. (Doc. 23 at 13.) Brown also relies on Dr. Marcellino's 2019 examination report, which notes that she does not "get along with people

5

sometimes," that her relationships with co-workers and supervisors are "not the best," that she experiences excessive irritability, and that her self-described mood was "sad." (Tr. 626, 629-30, 634-36.)

Brown is essentially asking the Court to reweigh the evidence, which is something it cannot do. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Contrary to Brown's contention, there was substantial evidence to support the ALJ's conclusion that she has no more than a mild limitation in the area of interacting with others. The ALJ relied on objective medical findings, Brown's interactions with her treating and examining physicians, and Brown's reported ability to "go out in public" and "go out alone," including socializing with family, going dancing, and volunteering. (Tr. 27-28.) While Dr. Marcellino's report does include notes related to Brown's reported social struggles, she also reported to Dr. Marcellino that she "was okay, average" in getting along with fellow service members and described her relationships to her father, mother, siblings, and daughter as "good" and "okay." (Tr. 626, 629-30, 634-36.)

In his behavioral observations, Dr. Marcellino further noted that Brown was "cooperative and polite" and there "was no affective flattening, alogia, or avolition observed," and while Brown's "[c]urrent mood appeared to be serious . . . [i]n relation to context, [her] mood was appropriate" and her "[a]ffective expression was stable." (Tr. 645.) Brown's mood, affect, and ability to interact with examiners was similarly noted as appropriate, normal, and calm by other

medical providers. (Tr. 409, 432, 435-36, 442, 449, 459, 464, 467, 471, 475, 485, 649, 710, 727-28, 779, 785, 787, 791, 796, 830, 847, 860-61, 863, 937.)

The ALJ's detailed discussion of Brown's treatment records, evaluation of various opinion evidence in the record, and consideration of Brown's own statements and activities reflect that the ALJ properly considered the combined effects of Brown's impairments. *See Nichols v. Comm'r of Soc. Sec., 679 F. App'x 792, 797 (11th Cir. 2017).*

At bottom, the Court finds that substantial evidence supports the ALJ's conclusions, and thus the ALJ did not err by treating Brown's mental impairments as non-severe. The Court **AFFIRMS** the Commissioner's decision and directs the Clerk to enter judgment for the Commissioner and close the file.

**ORDERED** in Fort Myers, Florida this September 18, 2022.

Kyle C. Dudek
United States Magistrate Judge

7